Stevens *v.* Flower.

WILLIAM R. STEVENS, surviving executor of the will of AARON FLOWER, deceased, et al.,

*v.*

FRANCIS L. FLOWER.

1. Legacies are ordinarily payable out of the personal estate of a testator,. and they will not be paid from the realty unless the testator expressly or by implication charges them upon it.

2. In determining whether legacies are charged by will upon realty, reference may be had, not merely to the expressions of that instrument, but also to the situation of the property disposed of and of the persons taking, and parol. evidence is admissible to show such extrinsic circumstances.

3. Where legacies are given generally and the residue of the real and personal estate is afterwards given in one mass, the legacies are charged on the residuary real as well as personal estate without express words to that effect.

4. A testator devised to his wife the use and income of all the residue of his. estate, real and personal, during her natural life, and the use of as much of the principal as she might need, and constituted her executrix of his will, with. power of sale and disposition, at her discretion.—*Held*, that her right to consume the principal was restricted to her *need*, and that she had a life estate only in that part of the property which she should not need to consume. The power to sell did not depend upon the happening of her necessity, but her right to consume did depend upon it.

On bill and answer.

*Mr. H. M. Nevius,* for the complainants.

*Mr. James Steen,* for the defendant.

THE CHANCELLOR.

Aaron Flower died on the 4th of June, 1878, having made his last will, bearing date on October 12th, 1876, by which, after directing the payment of his debts and funeral expenses by his. executors, he gave to his daughter-in-law Augusta a legacy of $500, to be paid at the death of his, the testator's, wife, with the proviso, that if his wife should be of the opinion that the neces--

sities of Augusta should require it, the legacy might be paid before the appointed time. Following these provisions, the will continues in the following language:

"I give and bequeath unto my beloved wife Mary P. Flower the use and income of all the residue of my estate, real and personal, during her natural life, and to use as much of the principal as she may need, and I do hereby authorize and empower her to sell and dispose of all or any part thereof at her discretion, and to give good and sufficient deed and deeds for all or any part of the landed property of which I may die seized and possessed.

"I hereby nominate and appoint my friends D. H. Morris and Wm. R. Stevens, of said township of Eatontown, trustees at the death of my said wife of all the remainder of my estate, real and personal, and I desire the said trustees to take the possession and hold the same for the benefit of those persons hereinafter named, to wit: one-half part thereof I give and bequeath unto my grandson Aaron P. Flower, to be paid to him upon his attaining the age of twenty-one years. Should my wife die before that period arrives, the said trustees will make suitable provision for his maintenance and education, and should he, my said grandson, incline to habits of intemperance or exhibit a propensity to waste and squander the same (which I hope will not be the case), the said trustees may, in their discretion, withhold the payment thereof to a later period of time, not to exceed nine years. The other half of my estate the said trustees will invest upon such securities as they may think best, and collect the interest thereon as the same becomes due and pay it over to my son Francis L. Flower until his death. Should other children hereafter be born to the said Francis L. and Augusta Flower, my will and wish is, that such child or children shall have the principal at the death of the said Francis L. Flower, and if more than one to be equally divided between them, and if no other child be left to inherit the same, my will is and I do hereby give and bequeath the whole to my said grandson Aaron P. Flower, and in the event of his death before the time when by this my last will and testament he shall receive the bequest or money herein bequeathed to him and have a brother or sister or brothers or sisters, I hereby give the same to them, share and share alike, and if there be none, in that case my will is, that the whole shall go to my said son Francis L. Flower and Augusta, his wife, and the survivor of them."

Provision is then made for the appointment of new trustees, and power of sale is given to the trustees.

The testator's personal estate was more than sufficient to pay his debts and the $500 legacy. His widow survived him, and after his debts were paid took the balance of the personalty and applied it to her own use. She also sold a portion of her husband's lands and used the proceeds of sale. She died in April,

1889, having then consumed all her husband's estate except a parcel of twenty acres of land, upon which she resided. By her will, made in July, 1883, she gave her entire estate to her son Francis by the following language:

"*Second.* I give, devise and bequeath unto my son Francis L. Flower all my property, both real and personal, whatsoever and wheresoever the same may be found, including my horse, carriage and harness, silver plate, stock in Commercial Fire Insurance Company of New York, and my household furniture."

In June, 1881, Augusta Flower separated from her husband, Francis, taking their son Aaron with her, and later was divorced from him and married to one Albert Kelly. Daniel H. Morris is dead. Aaron P. Flower is not yet twenty-one years of age.

The object of the bill, in which William R. Stevens, Augusta Kelly and Aaron P. Flower, by his next friend, join as complainants, and to which Francis L. Flower is the defendant, is to have it determined whether the legacy of $500 to Augusta Kelly is a charge upon the remaining twenty acres of Aaron Flower's land, and, if so, to have it paid thereout, and also to have it settled whether that land is subject to the trust provided by the will.

The answer admits the facts alleged in the bill and makes issue by denying that the legacy is a charge upon the land, and insisting that Mary P. Flower took the fee of the land, which, by her will, she transmitted to her son.

Two questions have thus been presented by all the parties who are interested in their determination, to wit: whether the legacy of $500 is a charge upon the land in question? and second, whether the widow of Aaron Flower took a fee in the land?

Legacies are ordinarily payable out of the personal estate of a testator, and they will not be paid from the realty unless the testator expressly or by implication charges them upon it.

In determining whether they are charged by a will upon realty, reference may be had, not merely to the expressions of the will, but also to the situation of the property disposed of and of the persons taking, and parol evidence is admissible to show such extrinsic circumstances. *Van Winkle* v. *Van Houten, 2 Gr. Ch.*

Stevens v. Flower.

*172 ; White v. Exrs. of Olden, 3 Gr. Ch. 343 ; Adamson v. Ayres, 1 Halst. Ch. 349 ; Snyder v. Warbasse, 3 Stock. 463 ; Dey v. Dey's Admr., 4 C. E. Gr. 137 ; Johnson v. Poulson, 5 Stew. Eq. 390.

In the case now considered the legacy was not, by the will, expressly charged upon the land. The testator first directed that his debts and funeral expenses be paid, then gave the legacy and directed that it be paid at his wife's death, or before that time if his wife pleased, and then gave the use and income of the " residue " of his estate, real and personal, to his wife for her life, with power to use so much of the principal as she might need, and to sell and dispose of his estate at her discretion, giving sufficient deeds for the lands that she might sell.

Here was a massing of the real and personal property as one estate and the disposition of the residue of that single mass. No distinction is made between the realty and the personalty. It is contemplated that there will be a residue of the massed property, which is to be composed of both real and personal estate.

The indications all point to the conclusion that the testator did not consider that one kind of his property would be exhausted before the other should be resorted to, but, on the contrary, that he looked to an equal exhaustion of both in the payment of the debts, funeral expenses and legacy.

In *Hawkins on Wills 294*, it is laid down as a rule of construction, that if legacies are given generally, and the residue of the real and personal estate is afterwards given in one mass, the legacies are a charge on the residuary real as well as the personal estate. The earlier cases in this court did not adopt this rule, but held that a gift of blended realty and personalty as residue, after general legacies, was not, by itself, sufficient to create a charge, but that it might have that effect if combined with other circumstances—such as the addition of the words " not herein otherwise disposed of "—the fact that the legacy is a pr\_\_ vision for a child ; that the residuary devisees are the executors, or that the legacy is in consideration of lands of the legatee which the testator has disposed of by his will or otherwise. *Van Winkle* v. *Van Houten, 2 Gr. Ch. 172 ; Paxson* v. *Potts's*

*Admr.*, *2 Gr. Ch. 313; Snyder* v. *Warbasse, 3 Stock. 463; Dey* v. *Dey's Admr., 4 C. E. Gr. 137.*

Later, however, in the case of *Corwine* v. *Corwine, 8 C. E. Gr. 368, affirmed on appeal, 9 C. E. Gr. 579,* the rule stated by Mr. Hawkins was adopted in the court of errors and appeals. There a testator bequeathed $200 to one daughter, and $1,200 to another daughter, and, after making a specific bequest to his three children, a son and the two daughters, gave the entire residue of his estate, real and personal, not otherwise disposed of, to his son in fee. The debts and legacies exceeded the personal estate. The chancellor held, as it had theretofore been held in this court, that a gift of the residue of blended realty and personalty, after general legacies, was not sufficient to sustain a charge of the legacies upon the realty, but that the fact that the personalty was not sufficient to satisfy the legacies, coupled with such gift, was enough to show an intention to charge the realty with the payment of the legacies.

When the case was decided by the court of errors and appeals, it was put squarely upon the rule cited from Hawkins, Justice Woodhull, who pronounced the opinion of the court, saying: "The rule, as here stated, meets our entire approbation. It is a simple and a safe rule, founded in justice and good sense, easy of application, and one that will, in a great majority of cases, give effect to the real intention of the testator. Although not heretofore recognized as the rule in this state, our decisions are not in conflict with it."

In *Johnson* v. *Poulson, 5 Stew. Eq. 390,* before the court of errors and appeals, in distinguishing that case from *Corwine* v. *Corwine,* Mr. Justice Depue explains the rule adopted in the last-mentioned case as follows: "Real estate is not charged with the payment of legacies unless the testator intended it should be, and that intention must be either expressly declared or fairly and satisfactorily inferred from the language and dispositions of the will. This rule was held, in *Corwine* v. *Corwine,* to be met, and its requirements satisfied, by giving to the word "residue" its natural and proper force and effect. It signifies what is left of a number or a quantity after something has been abstracted; the

residue of a farm is what remains of it after something has been taken away; the residue of a blended mass of real and personal estate is what remains after the mass has been diminished by something abstracted. Hence, when pecuniary legacies are first given, and afterwards the residue of the testator's estate, real as well as personal, his intention to have the legacies payable out of the real, if the personal estate be insufficient, appears, in the absence of any inconsistent words or provisions in the will, by necessary implication, from the words 'residue' or 'remainder,' when applied to the two kinds of property combined. It is to be observed, from the nature and grounds of this rule of construction, that it cannot prevail, except where the inference arising from the words above used, taken in their natural and reasonable sense, is not restrained or avoided by other words or provisions in the will, to which due effect must be given in collecting the intent from the instrument as a whole." Thus understood and explained, the rule adopted in *Corwine* v. *Corwine* is established in this state.

It appears to me to be clearly applicable to the case in hand. Here a general legacy is given, and the residue of the blended real and personal estate is given in a mass, to the life tenant, and over, at her death.

I entertain no doubt that the application of this rule secures a construction of the will which is in entire accord with the testator's intention. The legacy was not to be paid before the death of the widow unless she pleased to pay it. During her life she was empowered to consume principal of the estate according to her need. As she lived upon part of the realty, it would be natural that that would be the last consumed. It would, then, be wise, in order that the widow might not be embarrassed in the disposition of portions of the personalty to answer her need, that the legacy should be charged on the realty.

The legacy, I conclude, is a charge upon the plot of land described in the bill, and must be paid thereout.

The second inquiry concerns the present title to the twenty-acre lot.

. If Mary P. Flower took the fee thereof under her husband's will, it passed by her will to her son in fee by force of the general words used in the devise to the son, although it was not included in the specification of property made in that devise.

It will not serve any useful purpose to stop here to discuss the will of Mrs. Flower, for if she had the fee of the land in question, and by any possible construction of her will did not, by the devise referred to, pass it to her son, he would take it by descent, for the will makes no other disposition of it, and he is her only heir at law.

The important inquiry is, whether *she* took the land in fee. It is insisted that the devise of all the residue to her with power of disposition gave her the fee, and that the devise over after her death is void, because it is inconsistent with the estate which was given to her.

The devise to the wife was, by certain and express words, for her life. She was an executrix of the will. Her power to sell was substantially unlimited, but her right to consume the principal of the estate was restricted to her "need." She was authorized "to use as much of the principal as she may need."

In *Johnson* v. *Robbins, 16 Johns. 537, 538,* Chancellor Kent said: "We may lay it down as an incontrovertible rule, that where an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee, and the only exception to the rule is, where the testator gives an estate for life only by certain and express words, and annexes to it a power of disposal, in that particular and special case, the devisee for life will not take an estate in fee."

The rule thus stated has been repeatedly approved and applied in this state. Mr. Justice Depue collects and reviews the cases in *Downey* v. *Borden,* to the time when that case was before the court of errors and appeals (*7 Vr. 460, 467*), in an opinion affirming the decision of the supreme court, pronounced by Chief-Justice Beasley. *6 Vr. 74.*

Later, in the case of *Cory* v. *Cory, 10 Stew. Eq. 198,* reported in the court of errors and appeals, *sub nom. Pratt* v. *Douglass, 11 Stew. Eq. 516,* the rule was again applied.

In that case a testator gave his widow an estate for life in all his property, real and personal, and provided that the property should be under her control, and be used by her as she should see fit. The wife was executrix of the will, others being executors thereof. The will provided, that if she should find it to be necessary, or if she should see fit, to dispose of any part, or all, of the estate, she should have power, "as executrix," to "sell and dispose" of it. At the widow's death, the executors were to take charge of the estate and sell all of it that should then remain. Some bequests were made out of the proceeds of such sale, and the residue was disposed of.

It was held, both in this court and in the court of errors and appeals, that the wife took only a life estate.

Mr. Justice Depue said of the widow's interest: "There are no words in the will which authorize her to sell and dispose of the testator's property for her own use. On the contrary, the power of sale over his estate, real and personal, expressed in the will, is given to her as executrix, which implies a fiduciary disposition of the proceeds realized from the sales inherent in the office in virtue of which she was to exercise the power." He adds that her administrator must account for the principal realized by her from her sale and conversion of the property.

The substantial distinction between the case just referred to and the case before me is, that in the case before me the widow has power to appropriate to her own use such portion of the estate, over which she holds the power of disposal, as she may need. She is an executrix, and I think it may be fairly implied, from the terms of the will, that any sale made by her must be regarded as a fiduciary disposition of the property.

The testator's intention, that his widow should have only a life estate in that part of the estate which she should not need to consume, is conspicuous throughout the will.

It was only upon the happening of a contingency that a greater estate was given in any portion of the property, and that greater estate was restricted to the portion which would satisfy the contingency. She was to have only "as much of the principal as she may *need.*"

In the case of *Stevens* v. *Winship, 1 Peck 317*, a testator gave the use of his real and personal estate to his wife for her life, a legacy to a niece at the wife's death, and the residue of the estate over to his brothers and sisters. At the same time he gave his wife, "in case she shall stand *in need*, full power to sell his whole estate, real as well as personal, for her comfortable support." The widow was made executrix of the will. It was held that the widow took only a life estate, with power to sell depending on the contingency that she might need the estate for her comfortable support, and that if the contingency happened she could convey a fee.

In the case before me, I do not think that the power of the widow to sell depended upon the happening of her necessity, but I do think that her right to consume depended upon it.

Her executor should be held accountable for the proceeds of any sale that she made, and be allowed only for that part of such proceeds which was applied to satisfy her need. The widow's will indicates that she was possessed of considerable estate of her own. That fact, together with the circumstance that she did not sell the twenty-acre tract of land now in question, makes it plain that that land should now be devoted to the satisfaction of the $500 legacy and the purposes of the trust provided in the will.